UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF MICHIGAN

In re:

DON L. KESKEY,

      Debtor.

_____/

Case No. DL 15-06761
Hon. Scott W. Dales
Chapter 13

MEMORANDUM OF DECISION AND ORDER

PRESENT: HONORABLE SCOTT W. DALES
     Chief United States Bankruptcy Judge

I.  INTRODUCTION

The court held a hearing, by telephone, on March 26, 2020, to consider the Debtor's Motion For Order To Show Cause Why Creditor Parkview LLC Should Not Be Held in Civil Contempt (ECF No. 316, the "Motion").  On February 14, 2020, chapter 13 debtor Don L. Keskey (the "Debtor") filed the Motion after Lansing Parkview LLC ("Parkview") attempted to collect its claim by garnishing three bank accounts in September 2009 and obtaining a notice of levy in December 2019 regarding two parcels of real estate included within the Debtor's bankruptcy estate.

The Debtor complains that the garnishments and attempted execution against the real estate violated the automatic stay and that Parkview knew it was violating the stay yet pursued the remedy anyway.  For this, the Debtor seeks an order holding Parkview in contempt and awarding damages under 11 U.S.C. § 362(k).

Parkview contends, in contrast, that pursuant to a 2017 settlement embodied in an order dated June 28, 2017 (ECF No. 250, the "Settlement Order"), the court terminated the automatic

stay entirely as to Parkview and its claims, not simply as to the Debtor or property of the Debtor. Parkview, therefore, denies any violation of the automatic stay.

Because Parkview has the better reading of the parties' settlement, the court will deny the Motion.

## II.  JURISDICTION AND AUTHORITY

The Debtor's filing of his chapter 13 petition commenced a case under title 11, United States Code.  The United States District Court has jurisdiction over the Debtor's case, and all related proceedings including the present dispute, under 28 U.S.C. § 1334, but has referred all matters to the United States Bankruptcy Court under 28 U.S.C. § 157(a) and W.D. Mich. LGenR. 3.1(a).  Because the Debtor seeks relief related to the automatic stay -- a dispute that could arise only under title 11 --  the court regards the Motion as commencing a "core" proceeding under 28 U.S.C. § 157(b)(2)(A) and (G) that it has the authority to resolve.

## III.  ANALYSIS

The Debtor's Motion is premised on the carefully drawn language of § 362 itself, which offers three categories of protection.  More specifically, § 362(a) enjoins: (i) actions against the debtor; (ii) actions against property of the debtor; and (iii) actions against property of the estate. *See generally* 11 U.S.C. § 362(a).  The Debtor, himself a lawyer but here represented by two attorneys, concedes that as a result of a prior settlement embodied in the Debtor's confirmed chapter 13 plan the automatic stay in this case no longer enjoins Parkview from pursuing the Debtor, or even his property, but he argues it continues to enjoin Parkview from satisfying its judgment from any property that comprises the Debtor's bankruptcy estate (including the real estate described in Parkview's writ of execution).  He points to his confirmed Plan, which did not re-vest estate property in the Debtor and which preserves within the estate all property necessary

for his performance under the chapter 13 plan, as amended.  *See* Original Chapter 13 Plan (ECF No. 13, as amended by ECF Nos. 68, 93, 144, 157, 189, 203, 213 and 251, collectively the "Plan"). He cites, among other authorities, the court's decisions in *In re Markoch*, 583 B.R. 911 (Bankr. W.D. Mich. 2018) (drawing this distinction) and *In re Robinson*, 427 B.R. 412, 414 (Bankr. W.D. Mich. 2010) ("The court has interpreted 11 U.S.C. § 362(c)(3)(A) as drawing a distinction between actions against the debtor or property of the debtor, on the one hand, and actions against property of the estate, on the other.").

It is true, as the Debtor argues, that the court in *Markoch* recognized the statutory distinctions that § 362(a) and (c) draw between actions against the debtor or the debtor's property, and actions against, or to control, estate property.  Nevertheless, the court did so principally because § 362(c)(3)(A) provides that, if the court does not timely grant a motion to extend the stay under § 362(c)(3)(B), the statute provides that the stay will "terminate *with respect to the debtor . . .*" 11 U.S.C. § 362(c)(3)(A) (emphasis added).[1]  Significantly, *Markoch* also expressly noted that the debtor's residence in that case remained protected "so long as the property remains within the bankruptcy estate, or *until the court grants relief from the automatic stay*."  *Markoch*, 583 B.R. at 913–14 (emphasis added).  Here, as the docket makes clear, Judge Gregg did grant relief from the automatic stay when he approved the parties' settlement and confirmed the Debtor's plan.  This critical fact, and the italicized phrase quoted from *Markoch*, fatally undercuts the Debtor's reliance on that decision, and *Robinson*, and the statutory distinctions upon which both decisions relied.

---

[1] The court in *Robinson* and *Markoch* read the italicized language in the quoted passage as limiting the scope of the prescribed termination, seeing in it a Congressional design not to visit the penalty for serial filers (with one case dismissed in the prior year) upon creditors who had no say in the repeat filings and who, naturally, would depend on property of the estate for payment.  In contrast, the Settlement Order terminated the stay as to Parkview through proceedings in which other creditors could be heard on the question (e.g., by objecting to the Seventh Amendment in the plan confirmation process).

As the court observed during oral argument, the parties agreed to modify the automatic stay by terminating it, bringing its efficacy in this case to an end. Nevertheless, the Debtor seems to find ambiguity in the settlement:

> The stay was modified, not eliminated. While the creditor may proceed against Don L. Keskey to establish the amount owed (which was accomplished on July 9, 2019, by Court Order), any pursuit or interference with assets of the debtor's estate is prohibited and damaging to the debtor, to the estate and to the other creditors who are receiving their distribution as a result of the debtor's compliance with the plan provisions.

*See* Debtor's Reply to Creditor Parkview LLC Answer to Motion [Docket 325 & 327] (ECF No. 329). The Debtor's current argument, however, is inconsistent with the settlement and the Plan which the court approved and confirmed, respectively, in the Settlement Order and the Order Confirming Debtor's Plan (ECF No. 261, the "Confirmation Order"). More specifically, the Settlement Order approved the parties' agreement to bifurcate Parkview's claim into a "claim in chief" and a claim for attorney fees. With respect to the claim in chief, the settlement provided:

> The claim in chief, identified by the Judgement in the matter of Lansing Parkview, LLC v. K2M Group, LCC and Don L. Keskey in 30th Judicial Circuit Court Case number 13-721-CK dated June 9, 2015, shall be treated as direct paid by the Debtor and not through the chapter 13 plan. *The automatic stay shall be terminated as to this creditor as to this debt at the time of the confirmation of the 7th amended pre-confirmation chapter 13 plan.* This claim shall not be subject to the discharge should one issue in this chapter 13 matter.

*See* Settlement and Request for Court Order (ECF No. 249) at ¶ 3(a)(ii) (emphasis added).

With respect to the claim for attorney fees, the settlement provided as follows:

> Regarding the claim for attorney fees, identified as a portion of the same court proof of claim #12, and as established by the Judgement in the matter of Lansing Parkview, LLC v. K2M Group, LCC and Don L. Keskey in 30th Judicial Circuit Court Case number 13-721-CK, dated April 6, 2017, this claim shall remain in the chapter 13 bankruptcy until such time that the Chapter 13 trustee provides notification to the parties hereto that the bond escrow balance has transferred, as

described below, to 30th Circuit Court for the county of Ingham, State of Michigan. At that time this claim shall be treated as a direct pay and not included in the chapter 13 plan and the automatic stay shall be terminated as to this creditor as to this debt at that time. This claim shall not be subject to the discharge should one issue in this chapter 13 matter. No post confirmation plan amendment is required to activate this provision.

*Id.* at ¶ 3(a)(iv) (emphasis added).  The court notes that, in referring to the automatic stay, the parties used the phrase "terminated as to this creditor as to this debt" both with respect to the claim in chief and the attorneys fees.  In their settlement, the parties do not speak in terms of "annulling, modifying, or conditioning the stay," but "terminating" it, expressing a desire to bring it to an end. Nor, for that matter, did the parties speak in terms of terminating the stay "as to the debtor" and not "as to property of the estate" -- the distinction the Debtor now asserts in retrospect -- but instead terminating the stay as to Parkview and its two claims.

The Debtor, as the proponent of the Plan, used nearly identical language in the 7th Amended Pre-Confirmation Chapter 13 Plan (ECC No. 251, the "Seventh Amendment").  When the parties placed their settlement on the record, they bound themselves to it, and Judge Gregg fortified the binding effect when he entered the Confirmation Order approving the Plan as amended by the Seventh Amendment.  *See* 11 U.S.C. § 1327(a) (plan provisions bind the debtor and each creditor).  Certainly, if the Debtor had intended the more limited modification of the automatic stay that he now advocates, he need only have incorporated into the Plan the language from the statute to shield the property of the estate from Parkview's collection activity.

To the extent the Debtor now argues that the Settlement Order (and the Confirmation Order) are ambiguous,[2] the court notes that the interpretation of a court order generally does not

---

[2] It should come as no surprise to the Debtor (a member of the bar) that the court might construe ambiguities in the Plan against him, as the plan proponent.  11 U.S.C. § 1321. *Fawcett v. United States (In re Fawcett)*, 758 F.2d 588, 590 (11th Cir. 1985) (chapter 13 plan to be construed against the debtor) (cited approvingly in *Terex Corp. v. Metropolitan Life Ins. Co. (In re Terex Corp.)*, 984 F.2d 170, 175 (6th Cir. 1993)).

present a factual issue, *Winget v. JP Morgan Chase Bank, N.A.*, 537 F.3d 565, 572 (6th Cir. 2008), and that "the meaning of an ambiguous judgment or order must be determined by what preceded it and what it was intended to execute." *United States v. Booth*, 551 F.3d 535, 538–39 (6th Cir. 2009).

Most generally, what preceded the settlement was years of acrimonious litigation between the Debtor and Parkview, dating back at least to 2013. As Mr. Schumacher stated, the Debtor vigorously contested many rulings in the state courts, making several trips up and down the appellate ladder, incurring (and imposing) legal expense along the away. Even while affirming that the Debtor has the right to test the merits of court rulings, the Debtor's own counsel politely suggested during oral argument on the Motion that his client bears some responsibility for bringing us to the point that his obligation to pay Parkview's legal fees under the parties' contract and various state court orders far exceeds his obligation on the claim in chief -- by several hundreds of thousands of dollars so far. It is fair to assume that the parties hoped to continue their battle in a single forum, and they elected the Michigan courts, not the bankruptcy court. *See, e.g.*, Motion of Debtor Don L. Keskey for Mandatory and Permissive Abstention and Deferral of All Claims of Creditor Lansing Parkview, and Brief in Support (ECF No. 116).

The transcript of the hearing at which the parties put their agreement on the record is instructive. For her part, the chapter 13 trustee, Barbara P. Foley, explained that Parkview's claim would be split into two claims, as noted above. Although the parties contemplated some involvement by the trustee regarding the funding of an appeals bond on the attorney fee judgment, they clearly contemplated that the Debtor would take care of paying Parkview outside the bankruptcy. The trustee put it this way:

> [The claim in chief] will be paid directly or dealt with, I should say, directly by the debtor as to the creditors.  So, that claim will come out of the bankruptcy.  The stay will lift as to that claim.  And that claim will not be subject to the discharge. . . .

*See* Transcript of Hearing Held June 8, 2017 (ECF No. 248, "Tr.") at 4:25-5:5.  As to the claim for attorneys fees, the trustee explained that the Debtor would make payments to her in an amount sufficient to fund the second appeals bond, and when she had enough money on hand to fund the second bond, "at that point in time, that claim will come out of the bankruptcy," "[t]here will be a relief from stay," and "that claim will not be subject to discharge."  Tr. at 5:6-19.

The parties probably assumed that the two appellate bonds (one already funded at the time of confirmation, the other to be funded by the chapter 13 trustee shortly thereafter) would satisfy Parkview's two claims.[3]  This likely explains the other provisions of the settlement which, for all practical purposes, liberated Parkview and its claim from the Debtor's chapter 13 proceeding.  In addition to terminating the stay, the settlement (and the Plan) excepted Parkview's claim from any discharge that might be entered in the case, and precluded Parkview from participating in any distribution under the Plan.  This latter provision suggests that the settlement freed Parkview from the burdens of the Debtor's bankruptcy, remitting the creditor to its non-bankruptcy remedies.[4]

Moreover, from the transcript of the settlement hearing, it is rather clear that Mr. Keskey understood that after the settlement, the appeals bonds, not the automatic stay, would be staying Parkview's collection activity.  *See* Tr. at 14:1-9 ("Well, the bond – I'm -- I would hope that the bond meets the spirit of what's required to obtain a stay, a continuing stay in the state courts, which I'm fine with.").  Judge Gregg then responded to the Debtor's stated understanding: "The bond

---

[3] The bonds were obviously included within the Debtor's estate (to a considerable extent funded by plan payments) but also obviously dedicated to the repayment of Parkview's claim.  In other words, notwithstanding the Debtor's current interpretation of the settlement, at least some property of the estate was available to pay Parkview's claim under the terms of the settlement.

[4] Indeed, largely for this reason Parkview objected to, and the court denied, the Debtor's first post-confirmation plan amendment.  *See* Order dated March 27, 2020 (ECF No. 330) (withholding approval of post-confirmation plan amendment).

then prevents any collection activity until there is a full and final determination by the state court."
Tr. at 14:15-16.  From these comments, and the context leading up to the Settlement Order, *Booth*, 551 F.3d at 538–39, after the state courts determined the amount of the claim, Parkview could pursue collection activity.  Indeed, this is consistent with the parties' understanding that, regarding Parkview and its claim, the court was abstaining in favor of the state courts.  Tr. at 10:18-19 (where the Debtor notes that "the settlement is a form of abstention in itself.").

Nor is the court willing to construe the Settlement Order and Plan as simply authorizing the parties to return to state court to establish the amount of the debt.  Judge Gregg had already authorized the liquidation of Parkview's claim in the state appeals courts in the Scheduling Order dated August 19, 2016 (ECF No. 103), nearly a year before entering the Settlement Order.  This narrow interpretation of the "termination" of the automatic stay in the Settlement Order would render it redundant in view of the Scheduling Order.

Although the Debtor's counsel argued during the hearing that it would be "absurd" to interpret the Settlement Order as permitting Parkview to jeopardize the Debtor's plan payments though levy and execution, it is more implausible to interpret it as Parkview's agreement to forego plan distributions for five years in the hopes that it could later collect its non-discharged claims at the conclusion of the bankruptcy proceedings.  Rather, from the context of the settlement, it appears that the Debtor assumed, incorrectly as it turns out, that the appeal bonds would satisfy Parkview's claims in full, and that his Plan would be feasible as a result.  He failed to appreciate, however, that his zealous approach to this litigation would increase Parkview's claim to the point of eclipsing the claim in chief and exhausting the appeal bonds.  He would not be the first chapter 13 debtor to make a prediction about feasibility that did not come true and that, in light of post-confirmation events, seemed unwise and apt to jeopardize performance under a chapter 13 plan.

When the Debtor agreed to "terminate the stay as to this creditor as to this claim," he assumed the risk that Parkview's collection activity (including activity directed at estate property other than the appeal bonds) would jeopardize his plan. The court will hold him to the bargain.

## IV. CONCLUSION AND ORDER

The court reads the Settlement Order and Plan as terminating the automatic stay as to Parkview and its claim entirely and without reservation or conditions. Because Parkview acted within its rights to pursue collection under non-bankruptcy law (even as to property of the estate), it is not in contempt of the automatic stay. This conclusion renders it unnecessary for the court to consider any award of damages under § 362(k) or otherwise.

NOW, THEREFORE, IT IS HEREBY ORDERED that the Motion (ECF No. 316) is DENIED.

IT IS FURTHER ORDERED that the Clerk shall serve a copy of this Memorandum of Decision and Order pursuant to Fed. R. Bankr. P. 9022 and LBR 5005-4 upon Don L. Keskey, Sean L. Campbell, Esq., Kevin B. Schumacher, Esq., Barbara P. Foley, Esq., Frank D. McAlpine, Esq., and the United States Trustee (by electronic means).

END OF ORDER

**IT IS SO ORDERED.**

**Dated March 30, 2020**



Scott W. Dales
United States Bankruptcy Judge